WILLIAM F. BRUETT, APPELLANT, V. CITY OF OMAHA ET AL., APPELLEES.

FILED MARCH 18, 1932. No. 28183/

*Brome, Thomas & McGuire* and *Amos Thomas,* for appellant.

*John F. Moriarty, Harry B. Fleharty, Thomas J. O'Brien* and *Bernard J. Boyle, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY AND PAINE, JJ.

PER CURIAM.

As a resident taxpayer of the city of Omaha, plaintiff brought this action to enjoin the issuance of bonds by the city to pay for real estate acquired by the exercise of the power of eminent domain, for the purpose of an addition to the city municipal airport.

In effect, plaintiff alleged that the city was limited by its charter provisions to an issuance of bonds to the extent of $50,000 in any one year, for the purpose of paying for real estate for an airport, and that the city had exhausted its power by previously issuing bonds to that amount in the same year. A general demurrer to the petition was sustained. Plaintiff refused to further plead, and the action was dismissed. Plaintiff has appealed. The controversy depends upon the proper interpretation of certain provisions of the city's home rule charter.

The city of Omaha previously and during the same year had issued bonds to the extent of $50,000, under the provisions of section 17-A, art. IV of the charter (hereinafter referred to as section 17-A), and at the commencement of·this action was about to issue bonds to the extent of $23,150, pursuant to the provisions of section 57, art. III of the charter (hereinafter referred to as section 57).

Plaintiff contends that section 17-A was enacted as an amendment to the charter, modifies or amends section 57, and, in effect, limits the power of the city to issue bonds to pay for lands for an airport, or an addition thereto, to the sum of $50,000 in any one year.

Section 57 is voluminous. It confers general powers upon the city council to purchase and acquire, by the exercise of the powers of eminent domain, property for many public purposes, and provides a complete scheme for the payment of lands so acquired. Pursuant to the provisions of this section the city had previously acquired land for an airport, and discovered that it was without funds with which to improve the air field. Thereupon section 17-A was adopted as an amendment to the charter. That section provides: "Notwithstanding the limitations contained in section 22, art. IV of the charter the council is authorized to issue and sell bonds of the city, without a vote of the electors, in the year 1929 and annually thereafter for five (5) years, to and including the year 1933, in an amount not to exceed fifty-thousand dollars ($50,-000) in any one year. Bonds so issued shall be denominated 'Aviation Bonds' and the proceeds therefrom shall not be used for any other purpose than to acquire lands for use as an aviation field and to improve lands acquired and used as an aviation field."

It is contended that section 17-A imposes a limitation on the authority granted by section 57; that the latter section is a general provision and the former a special and therefore controls the general. Section 17-A does not purport to amend, modify or repeal section 57 or any of its provisions. The latter section authorizes the issuance of bonds, to pay for lands acquired for an airport, in an amount largely in excess of that provided by section 17-A. The amount so authorized is solely for the purpose of paying for the land, and not for any improvement thereof as an airport.

A charter provision in the home rule charter has the same force and effect as a statute. In Lewis' Sutherland, Statutory Construction (2d ed.) sec. 363, it is said: "If a statute is valid it is to have effect according to the purpose and intent of the lawmaker. The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent.

'The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. Courts will not follow the letter of a statute when it leads away from the true intent and purpose of the legislature and to conclusions inconsistent with the general purpose of the act.' 'Intent is the spirit which gives life to a legislative enactment.'" And in section 364 of the same work it is said: "The intent of a statute being the law, it necessarily follows that the object of all interpretation is to find out that intent."

While the language of section 17-A, which provides that the proceeds from the bonds "shall not be used for any other purpose than to acquire lands for use as an aviation field and to, improve lands acquired and used as an aviation field," may seem to imply a limitation of the power to pay for lands acquired for an air field, yet, when we take into consideration the purpose of its enactment, which was undoubtedly to provide for an additional fund with which to improve an air field, it would seem clear that the intent in the enactment of that section was not to curtail or limit the power given the council by the provisions of section 57.

We believe that the purpose and intent in enacting section 17-A was to give to the council a power additional to that granted in section 57, and not to limit the power granted by that section. It seems to be conceded that the defendant city and its officials have complied with every requisite of section 57 in the issuance of the bonds in question. We conclude that the city had the power which it sought to exercise, and that the trial court properly sustained the demurrer to plaintiff's petition.

It follows that the judgment of the district court should be and is

AFFIRMED.